### FRANKLIN v. J. P. FLORIA & CO., Inc.
### No. 15004.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

Stanley E. Loeb, of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit in compensation. As the employee, Richard Franklin, while working on a dock as a longshoreman in the employ of J. P. Floria & Co., Inc., held up his hand to shield himself from an iron bucket which was swinging towards him and which had been raised by a derrick from the hold of a vessel, his hand was struck and bent violently backwards and his wrist was twisted or wrenched. He was treated by the physician selected by his employer from the date of the injury, September 13, 1933, until October 5, 1933, at which time he was discharged by the doctor, who told him to return to work on October 12. He was paid compensation for the period of disability at the rate of $13 per week.

He did not return to work, but on October 15, 1933, consulted Dr. Ficklen, a physician and surgeon of his own selection, who found that he had a swelling above the wrist which, in the opinion of the doctor, incapacitated him. Dr. Ficklen treated him until November 27, at which time he discharged him as cured.

On November 27, 1933, while he was still under the treatment of Dr. Ficklen, he filed suit in compensation. That suit was settled amicably.

Still later the present suit was filed, plaintiff claiming temporary total disability and seeking judgment for $20 per week during the period of disability commencing from the date of the original injury, subject, of course, to a credit for the amounts already paid.

Defendant denies that there is any present disability and, although admitting that the original injury was sustained and that there was disability until Franklin was discharged by Dr. Ficklen, denies that the disability, if there was any disability after that date, resulted from the original injury.

Defendant further denies that the amount claimed by Franklin, to wit, $20 per week, is the amount to which his former rate of pay would entitle him even conceding that there is disability.

From a judgment dismissing his suit, plaintiff has appealed.

There is no doubt that at the time of the trial Franklin was suffering from what the doctors term "multilobular ganglia," which is a swelling of the flexor tendons on the dorsal surface of the hand. Defendant contends that these ganglia did not result from the original injury and also maintains that disability does not result therefrom.

The testimony with reference to the main question at issue—whether or not ganglia may be caused by a single traumatic injury, such as plaintiff sustained—is contradictory; certain of the doctors declaring that such a condition cannot be caused by a single injury and that ganglia, which they assert are of slow development, usually result from a series of strains rather than from one.

An expert produced by plaintiff is quite positive that ganglia may be caused by a single traumatic injury, but he concedes that when such occurs the ganglia usually appear very soon after the injury, though he

states that there may be cases in which the development will require weeks or even months.

Here the evidence shows that even when the employee was discharged by Dr. Ficklen, his own physician, which was some eleven weeks after the injury, there had been no manifestation of ganglia. The swelling for which Dr. Ficklen had treated the employee was in a different location—above the wrist—and apparently had no connection with the subsequent development on the dorsal portion of his hand.

As we have said, the medical testimony is conflicting. We have no way of determining which of the physicians is correct and, because of the fact that the burden of proof is on plaintiff to make his case certain, at least, by a preponderance of the evidence, we cannot do otherwise than hold with the district judge that the case has not been made certain.

■ In Trotti v. Natalbany Lumber Company (La. App.) 144 So. 627, 630, it is said:

"It has been invariably held that the complainant must establish by a preponderance of the evidence a causal connection between the accident and the injury or resulting disability. * * *"

This is a familiar rule and is applicable in compensation cases as well as in all others.

In Haddad v. Commercial Motor Truck Company, 150 La. 327, 90 So. 666, 673, the Supreme Court said:

"A case must be made out to a legal certainty; this is elementary, and is as true in the case of a suit under the Workmen's Compensation Act, like the present, as in any other. Piske v. Brooklyn Cooperage Company, 143 La. 455, 78 So. 734."

See, also, Davis v. Texas Construction Company (La. App.) 156 So. 672; Verrett v. New Orleans Public Service, Inc. (La. App.) 155 So. 908; Landers v. New Iberia Motor Company (La. App.) 155 So. 278; Yelverton v. Louisiana Central Lumber Company (La. App.) 155 So. 65; Wynn v. Standard Roofing Company (La. App.) 154 So. 668; Codifer v. Shell Petroleum Company (La. App.) 152 So. 133; Terry v. Sparco Oil Corporation (La. App.) 150 So. 391; Leon v. Great American Ind. Company (La. App.) 146 So. 351; Schultz v. L. Mundet & Son (La. App.) 146 So. 177.

In Rylander v. T. Smith & Sons, 145 So. 64, we said:

"As to the extent of plaintiff's disability, the position of plaintiff is maintained by one physician and that of defendant by another, the version of plaintiff's physician being accepted by the court below. We have no confidence in our ability to arrive at a more satisfactory result in an effort to resolve the doubts which the conflicting testimony raises. Consequently we will leave this matter as we find it."

We feel here, as we did there, that the record would not justify a reversal of the finding of the district court.

There is in the record the evidence of another expert who testified at the request of plaintiff. This evidence, however, was excluded below, and we shall hereafter present our reasons for agreeing with the district judge in excluding that evidence. However, since it is in the record, we have read it, and we find that it would not be sufficient even if admissible to tip the scales in favor of plaintiff.

■ When the case was called for trial, plaintiff and his counsel were well aware of the fact that the principal controversy would be waged over the question of whether or not the ganglia, from which plaintiff was then suffering, could be ascribed to the original injury, and in an effort to prove that the original injury could have been responsible, plaintiff placed upon the stand Dr. Ficklen, the physician and surgeon who had treated him. Dr. Ficklen, however, refused to qualify as an expert, limiting his testimony to the actual condition of plaintiff and to the treatment which he gave to him. Counsel for plaintiff proceeded with the other evidence, and then counsel for defendant offered expert testimony in an effort to prove that the present condition of plaintiff's hand could not have resulted from the accident. Thereupon, after the case was practically closed, counsel for plaintiff requested the court to continue the matter to a later day so that he might obtain the "testimony of an expert." This request was granted and counsel was given permission to take the testimony of the expert informally and out of court. When the case was again called for trial, counsel for plaintiff produced the testimony of two experts; but, on objection of counsel for defendant, the district court ruled that the testimony of only one might be admitted. Plaintiff complains of this ruling and argues that particularly in compensation cases the strict rules of evidence should not be rigidly enforced. He calls our attention to section 18, subsection 4, of Act No. 20 of 1914, as amended by Act No. 85 of 1926, which provides that "the Judge shall not be bound by technical rules of evidence

or by technical rules or procedure other than as herein provided."

He also cites Vignaul v. Howze (La. App.) 150 So. 88, 91, in which it was said that "technicalities * * * are not favored in compensation cases."

If the question of whether or not ganglia may result from such an injury as plaintiff sustained had not been necessarily involved in plaintiff's claim, and if affirmative proof on that point had not been plainly required, we think that when proof to the contrary was tendered by defendant, plaintiff would have been entitled to a full opportunity to produce proof in rebuttal; but on that very question the whole claim depended, and counsel should have been prepared to submit his proof without requiring additional time. Under the circumstances, when the court granted additional time for the taking of the testimony of an expert, the court did not abuse its discretion in refusing to accept the testimony of more than one. Had the court permitted other experts to testify, a request by defendant for further time to submit countervailing proof would have been reasonable and the litigation might have been protracted indefinitely.

Plaintiff was not taken by surprise by Dr. Ficklen's refusal to give expert testimony, because we find in the record no denial of the charge that Dr. Ficklen "had thoroughly discussed with counsel for plaintiff, before the trial, exactly what he would testify to."

District judges must have discretion as to the conduct of matters before them, and we do not think that there has been any abuse of that discretion here.

We conclude that plaintiff is entitled to weekly compensation at 65 per cent. of his daily rate of pay for the period of disability, that is to say, from September 13, 1933, to and including November 27, 1933, subject to a credit for the amounts already paid.

It is contended by defendant that, though plaintiff earned $.65 per hour, his daily rate of pay was not $5.20 because he had not worked so much as eight hours during any one day for some time preceding the date of the accident. Defendant thus contends that in order to obtain the correct daily rate of pay in such cases, the total earnings for several months prior must be divided by the number of working days during the period selected, and that the result will be the average daily earning. But we considered just such a contention in Rylander v. T. Smith & Sons, supra, and held that plaintiff "was entitled to be compensated upon a basis of his daily rate

of pay and not on his average weekly earnings."

The rule is well settled that, whether the claimant had actually worked fewer than the normal number of hours customary in the particular kind of work involved, nevertheless the daily rate of pay, as contemplated by the act, is obtained by multiplying the hourly rate by the number of hours in the normal working day. There is evidence, which is not rebutted, that eight hours is considered a normal working day and six days is a normal working week for longshoremen and stevedores and we, therefore, conclude that the average weekly wage of Franklin, for the purpose of fixing compensation, must be presumed to be six times $5.20, or $31.20. The compensation is, therefore, the maximum, or $20, per week.

Furthermore, we notice in the evidence of Mr. McQueen, the adjuster for defendant's insurer, that when settlement was made with plaintiff at the end of the second period of disability that settlement was made on the basis of $20 per week. In Mr. McQueen's testimony, for instance, we find the following:

"I paid $7.00 for each week he had been paid to bring the amount up to $20.00 per week."

Defendant claims to have already paid plaintiff $276.50, whereas counsel for plaintiff admits that $270 was paid. Of the amount paid by defendant, $20.50 seems to represent court costs expended in filing the first suit for compensation. Therefore, in determining the amount which was paid, $20.50 must be deducted. It thus follows that plaintiff has actually received $256 on account of his claim. He is entitled to $20 per week from September 13, 1933, to November 27, 1933, which is eleven weeks. He is entitled to any additional amounts up to the statutory limit which he may have expended for medicines and doctors, but we do not find them proven, except that they were included to the extent of $36 in the settlement of the first compensation claim. All in all it appears to us from the record that the full amount to which plaintiff is entitled has already been paid him. However, under the circumstances, the ends of justice will be best served by requiring defendant to pay the costs of this case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of defendant.